577 F.2d 1089
 78-1 USTC P 9465
 JOINT SCHOOL DISTRICT NO. 1, CITY OF PORT WASHINGTON,
VILLAGE OF SAUKVILLE, TOWNS OF GRAFTON, PORT
WASHINGTON AND SAUKVILLE, COUNTY OF
OZAUKEE, STATE OF WISCONSIN,
Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 77-1572.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 26, 1978.
Decided May 19, 1978.
 
 Thomas P. Guszkowski, Milwaukee, Wis., for plaintiff-appellant.
 Murray S. Horwitz, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee.
 Before FAIRCHILD, Chief Judge, and PELL and SPRECHER, Circuit Judges.
 FAIRCHILD, Chief Judge.
 
 
 1
 This is an action to recover from the United States withholding of taxes assessed by IRS and paid by the Joint School District No. 1 (Plaintiff). Because of subsequent changes in applicable law, this case deals only with payments collected in the last quarter of 1971, and the first quarter of 1972. However, the outcome of this case will ultimately affect approximately fifty school districts throughout the state of Wisconsin, and their employee-teachers.
 
 I.
 
 2
 The Wisconsin statutes relating to teacher retirement benefits[1] provide that both employers and teachers make mandatory contributions to the Wisconsin State Teachers Retirement System (STRS).[2] The teachers' mandatory contribution is set by statute at 6 percent of their pay.[3] Pursuant to Wisconsin law[4] the employers deducted this amount from the teachers' paychecks and remitted it to the STRS along with their own mandatory contributions, drawn from their own funds. The amount of the employers' mandatory contribution varied according to a statutory formula.[5]
 
 
 3
 In October of 1970, then Wisconsin Attorney General Robert W. Warren issued a formal opinion[6] stating that additional contributions to the STRS made by a municipal employer out of its own funds, pursuant to the requirements of a collective bargaining agreement, were proper and could be considered to be the payments out of the employee's compensation required under sec. 42.40(1) Wis.Stats. notwithstanding that they had not been deducted from the compensation of the teachers. The Attorney General concluded that the subject was properly governed by a collective bargaining agreement, that such contributions were not prohibited or otherwise illegal, and that the Wisconsin collective bargaining law, contained in sec. 111.70 Wis.Stats. (1971), and enacted after sec. 42.40 must be harmonized with the existing statute. He also determined that the statutes relating to contributions were not mandatory with respect to requiring a contribution by the teachers, but merely required that the contribution be made, either by the employee or the employer.
 
 
 4
 During 1971, as part of the collective bargaining process between plaintiff and its employee-teachers, and in reliance upon the Attorney General's opinion, the plaintiff agreed to withhold only 3 1/2 percent of the teachers' compensation for deposit in the STRS, and "pick up" the difference of 2 1/2 percent out of his own funds. This agreement went into effect on September 1, 1971.
 
 
 5
 On January 31, 1972 the plaintiff filed its employer's quarterly federal tax return, reporting wages subject to withholding of $552,500 and wages withheld of $80,628.88. On May 11, 1973 the IRS notified the plaintiff that it had understated the amount of wages subject to withholding by $3,513.88, and should have withheld an additional $702.78.[7] The $3,513.88 represents the amount paid into the STRS by the plaintiff, out of its own funds, pursuant to the collective bargaining agreement (the employer pick up payments).
 
 
 6
 The plaintiff paid the $702.78 under protest on June 26, 1973 and simultaneously filed a claim for refund. The claim was disallowed, whereupon the plaintiff filed this action.
 
 
 7
 The district court, in dismissing plaintiff's complaint ruled that the negotiated payments were "made on behalf of the employees and in satisfaction of the obligation imposed on the employees by sec. 42.40(1) Wis.Stats."
 
 II.
 
 8
 The government argues that the pick up payments constituted compensation to the employee-teachers, and must therefore be viewed as wages, subject to withholding. However, to say that the pick up payments constitute income to the teachers for income tax purposes is not the same as to say that they are subject to withholding. Income tax is imposed on taxable income (26 U.S.C. sec. 1). Generally this is gross income minus allowable deductions (sec. 63(a)). Section 61(a) defines gross income as "all income from whatever source derived" including under sec. 61(a)(1) "(c)ompensation for services." Withholding, however, is specifically confined to wages (sec. 3402(a)). Section 3401(a) defines wages as "all remuneration (other than fees paid to a public official) for services performed as an employee for his employer, including the cash value of all remuneration paid in any medium other than cash." In the recently decided case of Central Illinois Public Service Company v. United States, 435 U.S. 21, 98 S.Ct. 917, 55 L.Ed.2d 82, the Supreme Court held that an employer's reimbursement for lunch expenses of employees on non-overnight company travel may be income, but it did not constitute wages subject to withholding. The Court inter alia discussed the difference between taxable income and wages subject to withholding:
 
 
 9
 The two concepts income and wages obviously are not necessarily the same. Wages usually are income, but many items qualify as income and yet clearly are not wages. 435 U.S. at p. 25, 98 S.Ct. at p. 919.
 
 
 10
 In the case at bar we need not decide whether the pick up payments were income. We are concerned solely with whether they constituted wages, and as noted, the two concepts are not conterminous.
 
 III
 
 11
 The plaintiff argues that the negotiated payments are not wages because they are specifically exempted under sec. 3401(a)(12) Internal Revenue Code of 1954, which holds:
 
 
 12
 3401(a) . . . (wages) does not include remuneration paid
 
 
 13
 (12) to, or on behalf of, an employee or his beneficiary
 
 
 14
 (A) from or to a trust described in section 401(a) which is exempt from tax under section 501(a) at the time of such payment . . . .
 
 
 15
 Read on its face, the pick up payments clearly fit into this section. The government vigorously asserts, however, that the phrase "on behalf of, an employee . . ." is not to be given its broad literal meaning.
 
 
 16
 Throughout this action the parties have used the terms "employer contributions" and "employee contributions." Although these phrases were not to be found in the applicable statutes, the litigants have attached great importance to them, the government at one point stating "that section 3401(a) (12) applies only to employer contributions and not to employee contributions. . . ." The terms are on their face ambiguous, and as used by the parties to this action have served only to confuse an already unclear area of law. Viewed in the context of this case, there are three types of payments made by the employer to the STRS. They are: (1) payments out of the employers' own funds; (2) payments of teachers' funds, withheld from their paychecks, and (3) the employer pick up payments, also made out of the employers' fund. All three of these payments could be viewed as having been made "on behalf" of the teachers. The government, in claiming that sec. 3401(a)(12) applies only to the so-called employer contributions seems to be saying that it only applies to the first of these classes of payments. They would have us hold that the pick up payments belong in a class with the second type of payments; those being withheld from the teachers' paycheck. Plaintiff has not contested that the payments being withheld from the teachers' paychecks were subject to withholding.
 
 
 17
 The government makes several arguments in support of its claim. First, and least persuasive, they point to the treatment given these funds by the STRS. They claim that the STRS treated the pick up payments as significantly similar to the "employee contributions" (those funds drawn from the employee paychecks), and that this establishes their true nature. We note, however, that at trial the director of the STRS testified that they handled the pick up payments as employer contributions. It seems that the pick up payments were actually given a hybrid treatment by the STRS, being treated partially as so-called employer contributions, and partially like the employee contributions. Such a treatment cannot have great weight in our determination of this case.
 
 
 18
 During oral argument the government conceded that if we were dealing with a private employer-employee relationship, the negotiated payments could clearly constitute employer contributions. They assert however that since the teachers had a statutory duty to contribute a full 6 percent from their own monies to the STRS the pick up payments must be viewed as coming from the employees.
 
 
 19
 The argument can be viewed as one of basic contract law; an illegal bargain is necessarily void of effect. If sec. 42.40(1) Wis.Stats. is construed literally it would seem to render the collective bargaining agreement illegal, and therefore void.
 
 
 20
 As noted above, this case initially arose following a formal opinion of the Wisconsin Attorney General. It is true, as the district court pointed out, that the Attorney General has no authority to determine federal tax law, but in matters of state statutory construction his opinion is to be accorded great weight. Ultimately this question is one of state law; how is sec. 42.40 to be construed? The Attorney General found that the duty created under sec. 42.40 Wis.Stats. can be modified by a collective bargaining agreement entered into pursuant to sec. 111.70 Wis.Stats.:
 
 
 21
 It is clear that the purpose of the act is to provide a retirement system for teachers and that it is not the purpose of the act merely to make deductions from compensation paid to the teachers. 59 O.A.G. at p. 189.
 
 
 22
 It is also significant that subsequent to the period with which we are concerned, both the state of Wisconsin and the federal government have amended the legislation in this area.[8] The federal law, effective for taxable years beginning after December 31, 1973, expressly provides that the so-called pick up payments are to be treated as employer contributions. The Wisconsin legislation, effective March 31, 1972, codified the 1970 Attorney General's opinion.[9] As is often the case when a statute is amended in a respect in which it had been unclear, a dichotomy of opinion exists as to whether the amendment was intended to alter, or merely clarify the pre-existing law. Although the test of the amendment to the federal tax law, 26 U.S.C. § 414(h) specifies that it is effective as to taxable years beginning after December 31, 1973, the pertinent Conference Committee report states that its purpose is to "clarify present law."[10] In light of all the circumstances, including the state law as interpreted by the Wisconsin Attorney General, with respect to the character of the payments, it seems sound not to treat the amendment as demonstrating that the pre-existing law concerning pick up payments was different.
 
 
 23
 For these reasons, we conclude that the plaintiff is entitled to its refund. The judgment appealed from is reversed and the cause remanded with instructions that judgment be entered for plaintiff.
 
 
 
 [1]
 Chapter 42 Wis.Stats. (1971)
 
 
 [2]
 The STRS qualifies as a retirement plan under sec. 401(a) of the Internal Revenue Code, and as a trust fund under sec. 501(a) of the Code
 
 
 [3]
 Sec. 42.40 Required deposit
 (1) Each teacher who is a member of the separate group shall make a deposit in the retirement deposit fund equal to 6 percent of all compensation received for teaching service performed by such teacher.
 
 
 [4]
 Sec. 42.42(1) Wis.Stats. (1971)
 
 
 [5]
 Sec. 42.45(1) Wis.Stats. (1971)
 
 
 [6]
 590 O.A.G. 186 (1970)
 
 
 [7]
 Based on a blanket assessment rate of 20 percent
 
 
 [8]
 Sec. 42.40(9) Wis.Stats. (1975), L.1971, c. 214 § 120; 26 U.S.C. § 414(h)
 
 
 [9]
 We recognize the time difference between the effective dates of the two statutes, and the fact that the IRS did not seek withholding during the interim, March 31, 1972 to December 31, 1973. In a letter to the Port Washington School District dated January 11, 1973, the District Director of the IRS had conceded that the negotiated pick up payments made after the effective date of sec. 42.40(9) were not subject to withholding. Thus, the District Director seems to have believed that once the state statute codified the Attorney General's opinion, the payments were exempt from withholding under the federal statutes. The government now states that the position taken by the District Director was erroneous, and did not represent the position of the Commissioner. Because of equities arising from the District Director's letter, however, IRS decided not to collect withholding for the period between March 31, 1972 and December 31, 1973, when the amendment to the federal statute took effect
 
 
 [10]
 Conference Committee's Joint Explanation (Employment Retirement Act of 1974) (1974) U.S.Code Cong.Admin.News, p. 5060