**Russell L. ANDERSON, et al.,
Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 1–87T.**

United States Claims Court.

March 24, 1989.

Richard J. Hirn, Washington, D.C., atty. of record for plaintiffs.

Mary M. Abate, Washington, D.C., with whom were Asst. Atty. Gen. William S. Rose, Jr., Mildred L. Seidman, and Elizabeth DePriest, for defendant.

## MEMORANDUM OPINION

LYDON, Senior Judge:

The question for consideration in this federal tax refund suit is whether certain allowances granted civilian employees by the Department of Defense (DOD) are subject to social security and medicare (Federal Insurance Contributions Act (FICA)) taxes. Both parties have moved for summary judgment on the ground that there are no material facts in dispute. The submissions of the parties support this conclusion. Ac-

cordingly, summary judgment is an appropriate proceeding to utilize in considering the question at issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, ——, 91 L.Ed.2d 265 (1986). For reasons which follow, plaintiffs' motion for summary judgment is granted.

## FACTS

During 1984, 1985, 1986 and 1987, the years at issue, plaintiffs, eighteen in number, were employed at various times by the DOD as civilian teachers at the United States Naval Air Station in Bermuda. The DOD operates a Dependents School System (DODDSS) for the benefit of overseas personnel. Such a school system was established in Bermuda. The school established at the United States Naval Air Base in Bermuda was known as the Roger Chaffee School. While the Roger Chaffee School was operated by the DOD, the Navy Civilian Personnel Office in Bermuda, through a servicing agreement with DOD, administered all payroll matters for DODDSS civilian teachers in Bermuda.

While employed as civilian teachers in Bermuda, plaintiffs received certain allowances. One such allowance was a "living quarters allowance" (LQA); another such allowance was a "temporary lodging allowance" (TLA).[1] These allowances were generally paid to all civilian federal government employees stationed overseas when government-owned or rental quarters were not provided without charge for a government employee in a foreign area as authorized by the Overseas Differentials and Allowances Act (ODAA), 5 U.S.C. § 5923 (1982). While these allowances were generally paid to all civilian employees who were recruited in the United States and who were subsequently stationed overseas, the ODAA states the allowances "may be granted when applicable."

The allowances at issue were to reimburse those teachers for lodging costs they

---

1. The LQA reimbursed the civilian employee and his or her family for the actual cost of a rental apartment or house and utilities up to a specified ceiling. The TLA reimbursed the civilian employee and his or her family for the first 90 days after arrival at a new foreign post until they found permanent housing. The maximum allowance rate varied from foreign post to foreign post, depending on the results of a survey of housing costs in the foreign country.

incurred because free government-furnished quarters were not available.[2] The allowances were governed by Department of State Standardized Regulations (DSSR). Under these Regulations, allowances were not deemed part of "basic compensation" of the teachers. Teachers receiving allowances were generally required to provide satisfactory evidence of the actual lodging costs they incurred before they were reimbursed for said costs. In the case of TLA, advance payment of an allowance, limited in amount depending on circumstances, may be made only where advance rental payment for temporary quarters is required by the lessor. In the case of LQA, advance payment of an allowance, limited in amount depending on circumstances, may be made in localities where local custom necessitates such advance payments and where the individual lessor requires the customary advance payment of rent. The Regulations also covered recovery of any unpaid balance of advanced payment allowance. The Regulations make it clear that the LQA and TLA are simple reimbursements for lodging costs incurred by teachers in a foreign area who are not provided with government-owned or -rented quarters without charge as required by the ODAA. These same Regulations support the conclusion that the LQA and the TLA were not intended to represent additional compensation. These allowances were intended to reimburse teachers only for their actual lodging costs.[3]

The ODAA was enacted on September 6, 1960, Pub.L. No. 86–707, 74 Stat. 792, 802 (1960). However, similar allowances were available for Government civilian employees stationed in foreign countries as far back as 1930. *See* ODAA, Pub.L. No. 71–445, 46 Stat. 818 (1930). The ODAA also amended the Internal Revenue Code (the Code) to exclude the allowances discussed above from gross income and to exempt them from taxation. I.R.C. § 912(1)(C) (1982).

Prior to June 1984, the allowances in question paid to civilian teachers employed by DOD at the Roger Chaffee School in Bermuda were not included in their gross income and were exempt from federal income taxation. That situation did not change subsequent to June 1984. In June 1984, however, the Department of the Navy (the Navy) determined that LQA and TLA paid to United States citizen employees stationed overseas were subject to FICA taxes and directed its various civilian personnel offices to withhold FICA taxes from LQA and TLA allowance payments made to Navy civilian employees. It is interesting to note that the Navy, and not the Treasury Department operating through the Internal Revenue Service (the Service), was empowered to make this tax determination.[4]

2. The teachers who received free government-furnished quarters were not subjected to FICA taxes on the value of said quarters. Accordingly, teachers in the Roger Chaffee school system were treated differently. Those teachers who were fortunate enough to receive free government-furnished lodging were exempt from FICA taxes. However, those teachers, plaintiffs herein, who, because government-furnished lodging was not available, were forced to utilize non-government lodging, were subject to FICA taxes on the costs of said lodging. Neither category of teachers was required to pay income taxes on the value of the lodging received pursuant to the ODAA, I.R.C. § 912(1)(C) (1982).

3. Under the Regulations, there were ceilings on the amount of allowances which would be granted. The maximum rates for TLA covered the average costs of adequate but not elaborate or unnecessarily expensive accommodations. Maximum rates were grouped into classes as determined by the classification of the post, the teacher's family status, and the daily rates prescribed in the Regulations. The LQA was designed to cover substantially all of the average employee's costs for rent, utilities, and taxes levied by the local government and required by law or custom to be paid by the employee. Generally, a teacher received a LQA of his or her allowable costs as indicated in the Regulations, or the maximum rate for his or her post as indicated in the Regulations, which ever is less, unless the rate was revised by administrative action in accordance with the Regulations.

4. I.R.C. § 3122 (1982) as amended provides in pertinent part that "the determination of the amount of remuneration for such service which constitutes wages as defined in § 3121(a), and the return and payment of the taxes imposed by this chapter, [§ 3101 et seq.] shall be made by the head of the federal agency ... having the control of such service, or by such agents as such head may designate." In reaching its determination, the Navy reasoned that the Social

Pursuant to the June 1984 determination by the Navy, the Civilian Personnel Office in Bermuda began to withhold, and continues to withhold, FICA taxes from the LQA and TLA payments made to DODDSS teachers, including plaintiffs, stationed in Bermuda. As indicated previously, LQA and TLA continued to be excluded from gross income and continued to be exempt from income taxes.

The determination by the Navy discussed above was generated by the following facts. Prior to January 1, 1984, civilians employed by the United States Government were exempt from FICA coverage if their employment included coverage under the Civil Service Retirement System. That is, civilian employees generally were not subject to the imposition of FICA taxes on wages they received from federal civilian employment. However, most employees of the federal government, after January 1, 1984, were covered by FICA and thus their federal compensation was subject to the imposition of FICA taxes. *See* Social Security Amendments of 1983, Pub.L. No. 98–21, 97 Stat. 67, (codified as amended at 42 U.S.C. § 410, (1982 & Supp. IV (1986)). At present, most federal civilian employees are subject to the imposition of medicare taxes. *See* I.R.C. §§ 3101(b), 3111(b) and 3122 (1982).[5]

The affidavit of plaintiff Joseph H. Beer (Beer) (# 2) illustrates the factual basis for plaintiffs' claims. Beer, married with four children, was hired and began teaching at Roger Chaffee School at the Naval Air Station in Bermuda in September 1985. When he arrived in Bermuda in September 1985, he, and later he and his family, lived in temporary housing until December 1, 1985. For this period, he was reimbursed $14,580 as TLA by the Navy, from which $842 was withheld for FICA taxes. The $14,580 was not subject to federal income taxes.

On December 1, 1985, Beer and his family moved into permanent housing for which he paid $800 per month in rent. Housing resources on the small island of Bermuda were very limited and accordingly housing costs in Bermuda were very high.[6] Beer was paid as LQA $1,800 per month, which included utilities, etc., from which $135 was withheld for FICA taxes.

Beer seeks a refund of $929.64 which was withheld from his LQA and TLA allowances for the year 1985; he seeks a refund of $1,547.43 which was withheld from his LQA allowances for 1986; and he seeks a refund of $808.99 which was withheld from his LQA allowances for 1987.

On June 24, 1986, some plaintiffs filed claims with the Philadelphia District Director of the Service for refunds of the FICA taxes withheld from their 1984 and 1985 LQA payments. Some plaintiffs filed refund claims only for the FICA taxes withheld from their 1985 LQA payments. Plaintiffs who were newly stationed in Bermuda subsequent to June 1984, filed refund claims for FICA taxes withheld from TLA payments they received in 1984 and 1985. The Service disallowed plaintiff Begeman's (# 3) refund claim for 1984 and 1985 on December 9, 1987. Plaintiff Beer (# 2) filed a refund claim for 1985 FICA taxes withheld from LQA and TLA allowances paid him. Plaintiffs allege that the Service has failed to date to take final action on Beer's and other plaintiffs' 1984 and 1985 claims.

On June 6, 1988, plaintiffs Begeman (# 3), Blessing (# 4), Branick (# 5), Brew (# 6), Driscol (# 8), Hasselbring (# 12), Pohlman (# 13), Raper (# 14), Sandona

---

Security Administration (SSA) defined wages subject to full or partial social security taxation as "all remuneration for employment not specifically excluded." In recognition of this definition, the Navy concluded, as to employees assigned to foreign areas, that LQA and TLA were to be considered taxable wages for FICA tax withholding purposes, but were not to be considered taxable wages for federal income tax withholding purposes.

5. As of 1984, "social security taxes" (old-age, survivors, and disability insurance taxes) and "medicare taxes" (hospital insurance taxes) are levied by the FICA, which is part of the Code.

6. In his affidavit, plaintiff Beer states that the tax-free living allowance was one of the main reasons he decided to take a $10,000 a year pay cut from his previous position and accept the DOD teaching position in Bermuda.

(# 15), and Wyand (# 17) filed additional claims with the Service for refunds of FICA taxes withheld from LQA payments during 1986 and 1987. On December 19, 1988, the Service disallowed the 1986 and 1987 claims of plaintiffs Beer (# 2), Begeman (# 3), Blessing (# 4), Brew (# 6), and Driscol (# 8). On December 22, 1988, the Service disallowed the 1986 and 1987 refund claims of plaintiffs Hasselbring (# 12), Raper (# 14), Sandona (# 15), and Wyand (# 17). No action by the Service has been taken, as of this date, on the 1985 and 1986 refund claims of plaintiffs Anderson (# 1), Branick (# 5) and Pohlman (# 13).

Plaintiffs' complaint was filed in this court on January 2, 1987, and was amended on January 31, 1989. No procedural impediment to plaintiffs' tax refund claims in this court have been called to the court's attention.

## DISCUSSION

Plaintiffs' position that the LQA and TLA are exempt from FICA taxes rests primarily on the legislative histories of the ODAA and its predecessor, the Act of 1930. Since 1930, quarters allowances were granted to those civilian employees of the federal government stationed in foreign countries where free government-owned or -rented quarters were not available to them. The legislative history of the 1930 Act makes it clear that Congress wanted to equalize the treatment accorded those United States employees in foreign countries who were provided free government-owned or -rented quarters and those employees in foreign countries who were not so provided. Quarters allowances served, and Congress intended that these allowances serve, as the great equalizer. *See* 72 CONG.REC. 9309 (1930). It was also clear that while allowances were intended to equalize conditions among federal employees stationed in foreign countries, allowances were in no way to be considered a salary raise in disguise. Such was not the intent of the

quarters allowances. *See* 72 CONG.REC. 9313 (1930).

The 1930 Act was repealed and reenacted, with revisions, as the ODAA of 1960, 5 U.S.C. §§ 5922–5925. The ODAA provided, in pertinent part, as follows:

[w]hen government owned or rented [sic] quarters are not provided without charge for an employee in a foreign area, one or more of the following quarters allowances may be granted when applicable:

1) A temporary lodging allowance for the reasonable costs of temporary quarters incurred by the employee and his family

   a) for a period not in excess of three months after first arrival at a new post of assignment in a foreign area ... and

   b) for a period not more than [one] month immediately before final departure from the post ...

2) A living quarters allowance for rent, heat, light, fuel, gas, electricity, and water ...

5 U.S.C. § 5923.

The legislative history of the ODAA clearly shows that allowances were intended solely as a reimbursement for lodging costs incurred by federal employees who were assigned foreign posts. Congress clearly intended that federal civilian employees should be adequately reimbursed for additional expenses necessarily incurred because of their overseas services.

The purpose of the ODAA was "to improve and strengthen government overseas activities by establishing a uniform system for compensating all government employees in overseas posts irrespective of the agency by which they are employed, ..." and to "provide uniformity of treatment for all overseas employees to the extent justified by relative conditions of employment...." S.REP. No. 1647, 86th Cong., 2nd Sess., *reprinted in* 1960 U.S.CODE CONG. & ADMIN.NEWS at 3338.[7]

7. S.REP. No. 1647 also pointed out that "the importance of sound and effective personnel policies in the conduct of our overseas programs is well recognized. The success of such

programs depend largely upon the employees engaged in carrying them out. The effectiveness of their performance is directly related to the fairness and wisdom inherent in the policies

The ODAA also amended the Code to provide, in pertinent part, that quarters allowances granted under 5 U.S.C. § 5923 (1982) were not to be included in gross income and shall be exempt from taxation. It is clear that the allowances in question are exempt from federal income tax. The legislative history of the ODAA shows that "these allowances are not considered as part of basic compensation for tax purposes." S.REP. No. 1647, *reprinted in* 1960 U.S.CODE CONG. & ADMIN.NEWS at 3350.[8]

Plaintiffs conclude from an examination of the legislative histories of the ODAA and its predecessor 1930 Act that Congress intended that all federal overseas employees be treated uniformly, (*see* 105 CONG. REC. 18,436 (1959)) equally and fairly. To do otherwise, plaintiffs argue, creates morale problems,[9] a fact noted by Congress, as indicated earlier, as well as recruiting and employee retention problems.[10] Plain-

tiffs maintain that the intent of Congress, as expressed above, would be thwarted by imposition of FICA taxes on the quarters allowances at issue under the circumstances of the case.

Defendant's response to plaintiffs' reliance on the ODAA and its legislative history is that said history merely reflects congressional concern that the allowances in question not be included in the income tax base. Defendant argues that Congress intended, in the Social Security Amendments of 1983, that these allowances be included in the FICA tax base. Since the ODAA antedates the 1983 Social Security Amendments, the legislative history of that Act, defendant asserts, is immaterial to the question before the court. The soundness of defendant's view in this regard is most questionable under the facts of this case. *See Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 153, 96 S.Ct. 1989, 1992, 48 L.Ed.2d 540 (1976) ("a statute dealing with

---

under which personnel are employed." As noted in S.REP. No. 1647, "morale suffers when two employees arrive at a post together, are booked into the same hotel, pay the same room rate, but receive a different allowance." Congress intended to preclude such occurrences. S.REP. No. 1647 at 3339–40.

**8.** At the time the ODAA was enacted in 1960, federal employees were not subject to FICA taxes. It was not, as indicated earlier, until 1984 that federal employees were made subject to FICA taxes by the Social Security Amendments of 1983, 42 U.S.C. § 410 (1982 & Supp. IV (1986)). Plaintiffs argue that the definition of wages in I.R.C. § 3401 for income taxes is substantially the same as the definition of wages in I.R.C. § 3121(a) for FICA taxes, citing *Rowan Cos., Inc. v. United States,* 452 U.S. 247, 255, 101 S.Ct. 2288, 2293, 68 L.Ed.2d 814 (1981). From this observation plaintiffs conclude that since the allowances in question are exempt from federal income taxation they should logically and rationally likewise be excluded from FICA taxation. Whatever force this argument may have had, defendant counters, was weakened by the Social Security Amendments of 1983, effective January 1, 1984, which provided that merely because an item is exempt from income taxation does not mandate that it is similarly exempt from FICA taxation. I.R.C. § 3121(a); *see also* S.REP. No. 23, 98th Cong., 1st Sess., *reprinted in* 1983 U.S.CODE CONG. & ADMIN.NEWS 143, 183.

**9.** It is not difficult to appreciate the morale problem inherent in the case of two teachers, both recruited in the United States, who work at

the same overseas DODDS school, perform the same duties, receive the same salary, yet, one teacher, who was lucky enough to obtain available free government-owned lodging or rental facilities, obtains this benefit free of FICA taxes. In contrast, another teacher, who is unable to obtain free government-owned lodging or -rental facilities because none is available must secure and pay for nongovernment lodging or rental accommodations and have the reimbursement for same subject to FICA taxes, the result of which is, in effect, a diminution in salary to the extent of said FICA tax payments. Plaintiffs assert they are being penalized for the shortage of government-owned or -rented housing in Bermuda and treated differently than other civilian employees who are fortunate enough to secure free government-owned housing on the island of Bermuda where available housing is at a premium.

**10.** It is recognized that the federal government must compete with private industry for the recruitment and retention of overseas employees. Employees who are dissatisfied or believe they are being treated unfairly are more inclined to leave the government than those who are satisfied or believe otherwise. Congress was aware of this fact. *See* 105 CONG.REC. 18,439 (1959). An affidavit submitted by one of the plaintiffs in this case indicates that a tax-free lodging allowance was the main reason he endured a $10,000 pay cut on a state-side job in accepting an overseas DODDS teaching job.

a narrow, precise and specific subject [the ODAA] is not submerged by a later enacted statute [the 1983 and 1984 Acts] covering a more generalized spectrum").

As indicated earlier, the language of the Social Security Amendments of 1983 and its legislative history manifest congressional intent that merely because an item is exempt from federal income taxes does not mandate that it be exempt from FICA taxes as income tax withholding and FICA tax withholding had different functions. Since the objectives of the FICA tax are significantly different from the objectives underlying the income tax withholding rules, Congress felt that "amounts exempt from income tax withholding should not be exempt from FICA unless Congress provides an explicit FICA tax exclusion. S.REP. No. 98–23, 98th Cong., 1st Sess., *reprinted in* 1983 U.S.CODE CONG. & ADMIN. NEWS at 183.[11] Defendant views this action by Congress as manifesting an intent that items such as the allowances in issue be included in the FICA wage base unless a specific exception to the contrary is provided in the FICA statute.

Defendant's position is that plaintiffs, as federal employees, were made subject to the imposition of FICA taxation by the Social Security Amendments of 1983.[12] In order to be exempt from FICA taxes, defendant argues, the plaintiffs must show that the allowances in issue are not, in the first instance "remuneration" or "compensation for services" or must show that the allowances come within one of the twenty explicit statutory exceptions to the definition of "wages" set forth in the FICA statute, I.R.C. § 3121(a) (1982 & Supp. IV).

Section 3121(a), relating to "Employment Taxes", reads, in pertinent part, as follows:

(a) Wages.—For purposes of this chapter, the term "wages" means all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash; except that such term shall not include—

\* \* \* \* \* \*

(19) the value of any meals or lodging furnished by or on behalf of the employer if at the time of such furnishing it is reasonable to believe that the employee will be able to exclude such items from income under section 119; [exclusion from gross income—meals or lodging furnished for convenience of employer on employer's premises] or

(20) any benefit provided to or on behalf of an employee if at the time such benefit is provided it is reasonable to believe that the employee will be able to exclude such from income under section 74(c), [exclusion from gross income—"certain employee achievement awards"], 117 [exclusion from gross income—"Qualified Scholarship"], or 132 [exclusion from gross income—"working condition fringe"].

11. This pronouncement grew out of the Supreme Court decision in *Rowan Cos., Inc.* 452 U.S. 247, 101 S.Ct. 2288, wherein the Supreme Court invalidated a regulation which included in FICA "wages" the value of employer-provided meals and lodging which was excluded by the regulations from income tax withholding. This holding by the Supreme Court was based on its determination that the definition of "wages" for both FICA and income taxes was the same. It is interesting to note that Congress concluded that the value of meals or lodging furnished by or on behalf of the employer for the convenience of the employer should be excluded from FICA to the extent that such value is also excluded from the employee's gross income. Exception (19) to the definition of wages in I.R.C. § 3121(a) reflects the congressional view in this regard. In this instance at least the amounts exempt from federal income tax withholding are determinative of whether said amounts would be exempt from FICA withholding. *See* S.REP. No. 98–23, 98th Cong., 1st Sess., *reprinted in* 1983 U.S. CODE CONG. & ADMIN.NEWS at 183. This result supports the view that where an item is exempt from income tax withholding, that fact is entitled to some consideration in determining whether the same item is, or should be, exempt from FICA tax withholding.

12. Prior to 1984, federal government employees were generally exempt from FICA taxation because the term "employment" for FICA tax purposes did not include "service performed in the employ of the United States...." I.R.C. § 3121(b)(6) (1982). The Social Security Amendments of 1983, however, made FICA taxation fully applicable to "wages" of federal government employees beginning January 1, 1984.

Nothing in the regulations prescribed for purposes of chapter 24 (relating to income tax withholding) which provides an exclusion from "wages" as used in such chapter shall be construed to require a similar exclusion from "wages" in the regulations prescribed for purposes of this chapter.

Defendant asserts that the term "remuneration" in section 3121(a) has the same meaning as "compensation for services" I.R.C. § 61(a)(1) (gross income defined). Plaintiffs do not challenge this assertion.

Plaintiffs stress that the allowances in question are not "remuneration" or "compensation for services", within the purview of "wages" set forth in the FICA statute. Plaintiff refers to the legislative history of the early Act of 1930, *supra,* which clearly shows that the allowances in issue were not to be deemed part of salary. *See* 72 CONG.REC. 9313 (1930). The 1960 ODAA reinforced this congressional intent that these allowances were not to be considered part of basic compensation for tax purposes. *See* S. REP. No. 1647, *reprinted in* 1960 U.S.CODE CONG. & ADMIN.NEWS at 3350. Plaintiffs also call attention to the DSSR, which exclude these allowances from the definition of salary and emphasize that the allowances are "intended to reimburse an employer for substantially all of his [or her] costs for either TLA or LQA whenever government-owned or -rented quarters are not provided to him/her and his/her post without charge." Employees, under these Regulations, are only reimbursed for their actual costs up to a certain ceiling which varies depending on specified circumstances, and employees are required to submit a written report of their living expenses on a standard form. The Regulations also provide that only United States citizens recruited in the United States and assigned overseas are eligible for the allowances. United States citizens already living overseas and hired as civilian teachers while living overseas are not eligible for the allowances. Finally, an overseas teacher is eligible to receive allowances for a limited period even when he or she is not performing any services whatsoever. The totality of these circumstances clearly support the view that the allowances in question are not "remuneration" or "compensation for services." Without more, these allowances, reimbursements paid plaintiffs for actual lodging costs they incurred, can reasonably be viewed as outside the pale of "wages" as defined in the FICA statute, I.R.C. § 3121(a) (1982). *See Royster Co. v. United States,* 342 F.Supp. 375, 377 (E.D. Va.1972), *aff'd,* 479 F.2d 387, 388–392 (4th Cir.1973) (rejection of view that any payment made to an employee which is attributable to the "employment relationship" constitutes wages subject to FICA withholding); *Stubbs, Overbeck & Associates v. United States,* 445 F.2d 1142, 1149 (5th Cir.1971) (payments to an employee must be made for services performed). *Humble Oil & Refining Co. v. United States,* 194 Ct.Cl. 920, 442 F.2d 1362 (1971) (moving expenses paid by employers not "remuneration" for services performed and thus not wages for FICA purposes).

Defendant counters that "remuneration" or "compensation for services" was enlarged and broadened by the 1983 Social Security Act to encompass all aspects attributable to the employment relationship. There is no question that Congress, in enacting the 1983 Social Security Amendments, intended to broaden the FICA base. The issue here is whether Congress intended to include the allowances at issue in the FICA tax base.

Nothing in the legislative history of the 1983 Social Security Amendments indicates that Congress intended reimbursements to employees for actual costs they incurred for lodging for the convenience of the government—their employer—be deemed "remuneration" or "compensation for services" and thus subject to FICA taxation. Defendant's brief does not persuasively argue to the contrary. However, defendant calls the court's attention to the Tax Reform Act of 1984, 98 Stat. 494, 1057, effective January 1, 1985, in support of its contention that no benefit (cash or otherwise) received by an employee in an employment context is excludible from the FICA wage base unless a specific exception is provided in the FICA statutes.

The Tax Reform Act of 1984 addressed the tax treatment of "fringe benefits".[13] Defendant cites to the legislative history of the 1984 Act wherein it was stated that the statutory term "remuneration" was to be interpreted broadly because, in the case of FICA taxes, withholding is generally the only collection method available. H.R. REP. No. 432, 98th Cong., 1st Sess., *reprinted in* 1984 U.S.CODE CONG. & AD-MIN.NEWS 697, 1217, 1233. From the Tax Reform Act of 1984 and its legislative history, defendant concludes that Congress intended that no benefit, cash or otherwise, received by an employee in an employment context is excludible from the FICA wage base, unless a specific exception is provided in the FICA statute. Defendant avers that since the allowances at issue were not specifically exempt from the FICA tax base under I.R.C. § 3121, the allowances are therefore automatically subject to FICA withholding. The essence of defendant's argument in this regard can be found in the maxim "expressio unuis est exclusio alterius." However, it would be improper to apply this maxim in this case, as urged by defendant since the court feels it would produce a result which Congress did not intend. *See Gregory v. United States,* 123 Ct.Cl. 794, 800–801, 107 F.Supp. 840 (1952).

In its initial brief, plaintiffs state that Congress, when it made federal employees subject to FICA in 1983, "did not specifically exclude these allowances from the definition of wages for FICA purposes." In its initial brief, defendant raised a "straw man" argument for plaintiffs and then proceeded to discredit this argument. In the Tax Reform Act of 1984, Congress amended section 3121(a) of the Code by adding another exception to the FICA definition of "wages." That new exception was paragraph (20) to section 3121(a), which provided, in pertinent part, that the term "wages" does not include "any benefit provided to or on behalf of an employee if at the time such benefit is provided it is reasonable to believe that the employee will be able to exclude such benefit from income under section 74(c) (employee achievement awards), 117 (qualified scholarships), or 132 (working condition fringe)."

Section 132 was added to the Code by the Tax Reform Act of 1984. Section 132 excluded from gross income, inter alia "working condition fringe." Section 132(d) defines a "working condition fringe" as "any property or services provided to an employee of the employer to the extent that if the employer paid for such property or services, such payment would be allowable as a deduction under section 162 or 167 [depreciation]."

In its reply brief, plaintiffs seized upon defendant's "straw man" argument and took the position that if the allowances are deemed wages for FICA purposes, then they would fit within the definition of "working condition fringe" which would exclude them from FICA taxation under section 3121(a)(20) of the Code set forth above. Plaintiffs argue that the allowances are lodging expenses incurred in pursuit of a trade or business while "away from home" and thus under section 162 of the Code would be an allowable deduction and accordingly exempt, under section 3121(a)(20) of the Code, from FICA taxes. Defendant counters that plaintiffs have failed to show they meet two of three conditions necessary for a section 162 deduction, i.e., "away from home" and nature of assignment, temporary or indefinite.[14] There does not

---

**13.** Examples of "fringe benefits"—employer-provided automobiles, a flight on an employer-provided aircraft, employer-provided vacation, employer-provided membership in a country club —were set out in Temporary Treasury Department Regulations filed subsequent to the Tax Reform Act of 1984 and cited by defendant in its brief. Section 1.61–2T(a)(1). The allowances which are at issue herein were not listed as examples and indeed bear little resemblance to the cited examples of "fringe benefits."

**14.** Defendant states that in order for the allowances at issue to be deductible under 162 certain conditions must be met, two of which are that the allowances must be incurred "while away from home" and his assignment overseas must be "temporary." *Comm'r v. Flowers,* 326 U.S. 465, 470, 66 S.Ct. 250, 252, 90 L.Ed. 203 (1946). Failure to satisfy any one of these conditions, defendant argues, precludes a § 162 deduction allowance. *Id.* at 472, 66 S.Ct. at 253. The parties dispute whether plaintiffs meet the "away from home" condition. As to the status

seem to be any dispute about plaintiffs meeting the third condition necessary for a section 162 deduction, i.e., "exigencies of business." At best, defendant argues, there are disputed factual matters connected with this issue which would, in any event, preclude the granting of summary judgment on this issue, citing *Comm'r v. Flowers*, 326 U.S. 465, 470, 66 S.Ct. 250, 252, 90 L.Ed. 203 (1946).

The parties initially tangle over whether the allowances are "wages" within the purview of the FICA statute. Under the ODAA, the allowances are not part of salary and were not intended to be "compensation for services." The allowances were reimbursements for actual lodging costs incurred by overseas employees for the convenience of their employer—the government. The employee incurred the costs and then, upon submission of an appropriate invoice or report, was reimbursed for the actual costs incurred. These facts are sufficient to place the allowances in question outside the pale of the term "wages" which is defined in the FICA statute, section 3121(a) of the Code, as meaning "remuneration" which defendant equates with "compensation for services." *See Royster Co.*, 479 F.2d at 389–392. Defendant argues for a definition of "remuneration" broad enough to embrace the allowances in suit but fails to persuasively show that such a holding would comport with the intent of Congress relative to these ODAA allowances.

Resolution of the issue raised in this case rests on reaching a determination on the intent of Congress. Plaintiffs rely on the congressional intent, manifested in the ODAA and its predecessor Act of 1930 and their legislative histories, that the allowances in question reflect uniformity, equality and fairness in treatment of overseas employees and be free from taxation since the allowances did not represent compensation for services but were reimbursement for expenses incurred by the employees for the convenience of the government—their employer.[15] The only drawback to recovery by plaintiffs in this case is the passage of the 1983 Social Security Amendments wherein federal employees were subject to the imposition of FICA taxes. It is conceded plaintiffs' allowances were, at no time since 1930, subject to the imposition of federal income taxes.

Defendant relies on the intent of Congress, manifested in the 1983 Social Security Amendments and the Tax Reform Act of 1984 and their legislative histories, that the allowances at issue are subject to FICA withholding, since the allowances can reasonably be included within a broad definition of "remuneration" in the FICA wage base statute and are not otherwise specifically excluded from the definition of "wages" set forth in the FICA statute, I.R.C. 3121(a).

of the overseas assignment, defendant suggests this too requires a factual inquiry. *Peurifoy v. United States*, 358 U.S. 59, 60–61, 79 S.Ct. 104, 104, 3 L.Ed.2d 30 (1958). Defendant, citing Rev.Rul. 83–82, 1982–1, C.B. 45, 46, contends that overseas assignments which are expected to last one year or longer are presumed to be indefinite and not temporary and thus plaintiffs, in any event, cannot meet one of the conditions necessary to support a § 162 deduction. Accordingly, defendant concludes, plaintiffs are not entitled to an exemption under I.R.C. 3121(a)(20) (1982). Plaintiffs' amended complaint show that three plaintiffs were employed overseas for at least one year, four were employed overseas for two years, four were employed overseas for three years and seven were employed overseas for four years.

**15.** Defendant says that any argument resting in whole or in part on unfairness is without merit

when construing the boundaries of tax exclusions and exemptions, citing *Comm'r v. Kowalski*, 434 U.S. 77, 91–92, 98 S.Ct. 315, 323–24, 54 L.Ed.2d 252 (1977). Defendant, however, fails to appreciate the fact that the unfairness associated with the allowance issue is part and parcel of the intent of Congress as shown by legislative history of the ODAA. The concept of unfairness is germane when it is one of the elements of congressional intent. In the *Kowalski* case, an unfairness argument arising out of the fact that members of the military could exclude subsistence allowances from gross income whereas state police could not was rejected on the grounds, inter alia, that Congress recognized and allowed such unfairness. In the case at bar, Congress specifically stated it did not want unfairness to flow from or to be connected with overseas allowances. Congress wanted all overseas employees to be treated alike relative to overseas lodging allowances.

There is tension between the congressional intent of the ODAA and the 1983 and 1984 Acts referenced above. The question that arises is whether Congress, in passing the 1983 and 1984 Acts, intended to negate the intent and purpose of the ODAA.

The allowances in question are exempt from gross income and from federal income taxes. There is no dispute about that. I.R.C. § 912. Defendant says this fact is immaterial because Congress, in the 1983 Social Security Amendments, stated that, merely because payments are excluded from "wages" for federal income tax purposes does not require a similar exclusion from "wages" for FICA tax purposes. In the same 1983 Act, however, Congress provides in exclusion (19), section 3121(a)(19), that meals and lodging furnished by an employer are excluded from the FICA tax base if such items are excluded from gross income under section 119. Further, in the Tax Reform Act of 1984, Congress provided in exclusion (20), section 3121(a)(20), that benefits provided to or on behalf of an employee are excluded from the FICA tax base if such benefits are excluded from gross income under sections 74(c), 117 or 132. Accordingly, it is reasonable to conclude that while an exclusion from federal income tax is not determinative of whether a similar FICA tax exclusion is called for, it supports the view that a benefit or payment excluded from gross income and thus from federal income tax carries some weight in determining congressional intent relative to a FICA tax exclusion for that same benefit or payment.

As indicated above, there is tension between the specific congressional intent manifested in the ODAA and the general-ized intent manifested in the 1983 and 1984 Acts discussed above.[16] To accept defendant's generalized and broad view that these Acts manifest congressional intent that the ODAA allowances be subjected to FICA taxes runs counter to the purpose, intent and rationale of the ODAA. Indeed, such a holding would defeat the purposes of the ODAA by creating inequality and upsetting uniformity in the allowances granted overseas teachers. This unfairness, which Congress in the ODAA specifically said it wanted to eliminate relative to these allowances, should not be resurrected on the generalized language of the 1983 and 1984 Acts. *See Radzanower,* 426 U.S. 148, 153, 96 S.Ct. 1989, 1992.

It is true that one can read the broad and generalized language of the 1983 and 1984 Acts and their legislative histories as supportive of defendant's position that the allowances herein are subject to FICA taxes. However, in view of the specific intent of Congress to create uniformity and equality in the matter of allowances granted overseas employees of the government by the 1960 ODAA, the broad and generalized language of the 1983 and 1984 Acts should not be accepted without something more specific than broad and generalized assertions of congressional concern relied on by defendant. *See Morton v. Mancari,* 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2483, 41 L.Ed. 2d 290 (1974). The Supreme Court captured the essence of this matter in *Church of the Holy Trinity v. United States,* 143 U.S. 457, 472, 12 S.Ct. 511, 516, 36 L.Ed. 226 (1892) when it said:

> .... It is a case where there was presented a definite evil, in view of which the legislature used general terms with

---

**16.** The purpose of the Social Security Amendments of 1983 and the Tax Reform Act of 1984 relating to FICA matters was to restore financial soundness and stability to the Social Security System. *See* H.R.REP. No. 25, 98th Cong. 1st Sess. 2, *reprinted in* 1983 U.S.CODE CONG. & ADMIN.NEWS 219. The purpose of the ODAA, the authority for the allowances in question, was to treat overseas employees such as plaintiffs in a uniform, fair and equal manner relative to additional expenses they necessarily incurred in relation to their overseas service. *See* 105 CONG.REC. 18,436–37 (1959); *See* n. 7, and

text, *supra.* Exempting the allowances in this case from FICA taxes would recognize the congressional purpose and intent behind the ODAA and would not in any significant way intrude on or work against the intent of the 1983 and 1984 Acts. Denying the allowances would run counter to the clear intent of the ODAA. Courts are under a duty to construe statutes, ostensibly conflicting or at odds with each other, so as to harmonize them where that can be done reasonably. *See* 2A *Sutherland Stat.Constr.,* 53.01 (4th Ed.).

the purpose of reaching all phases of that evil, and thereafter, unexpectedly, it is developed that the general language thus employed is broad enough to reach cases and acts which the whole history and life of the country affirm could not have been intentionally legislated against. It is the duty of the courts, under those circumstances, to say that, however broad the language of the statute may be, the act, although within the letter, is not within the intention of the legislature, and therefore cannot be within the statute.

The court is convinced that Congress, in trying to shore up the ailing Social Security System, and using broad and general language with the purpose of reaching all phases of the ailing system, did not intentionally legislate to subject the allowances in question to the FICA tax base.[17] *See Select Tire Salvage Co., Inc. v. United States*, 181 Ct.Cl. 695, 703, 708, 386 F.2d 1008, 1012, 1015 (1967).

### CONCLUSION

In light of the above discussion, plaintiffs' motion for summary judgment is granted and defendant's cross motion for summary is denied. Plaintiffs are entitled to a refund for FICA taxes paid covering the years 1984–1987. The parties are to provide the court with the amounts due each plaintiff within sixty (60) days in order that an appropriate final judgment might be entered by the court.

---

**17.** It bears repeating that Congress, in the 1983 and 1984 Acts, I.R.C. § 3121(a)(19)(20), exempted lodging costs paid by employers from the FICA tax base where those costs were also excluded from income taxation. The ODAA allowances at issue are by statute excluded from gross income and exempt from federal income taxation. I.R.C. § 912(1)(c) (1982). Given the legislative history of the ODAA, the court refuses to believe that Congress intentionally meant to treat the lodging allowances of civilian overseas employees differently than the lodging costs of nongovernment employees and employers exempt from FICA taxation under § 3121(a)(19), (20) of the Code. *See Comm'r v. Kowalski*, 434 U.S. 77, 98, 98 S.Ct. 315, 327. (Blackman, J., dissenting).