Russell L. ANDERSON, Joseph J. Beer, Gerald L. Begeman, Kathryn G. Blessing, Marion Branick, Patrick Brew, James Cullop, Janet V. Driscol, Roberta Anne Eddy, Ann J. Gasparini, Susan Lynn Greiner, Leroy W. Hasselbring, Leon E. Pohlman, Wanda Jo Raper, Sandra Katherine Sandona, Robert E. Thompson, Frances Wyand, and Victoria Youngblood, Plaintiffs–Appellees,

v.

The UNITED STATES, Defendant–Appellant.

No. 90–5002.

United States Court of Appeals, Federal Circuit.

March 21, 1991.

Richard J. Hirn, of Washington, D.C., argued for plaintiffs-appellees. With him on the brief was Ronald R. Austin, Gen. Counsel, Overseas Educ. Ass'n, of Washington, D.C.

David M. Moore, Attorney, Dept. of Justice, of Washington, D.C., argued for defendant-appellant. With him on the brief were Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen and David English Carmack, of counsel, Kimberly S. Stanley, Dept. of Justice, Washington, D.C.

Before NIES, Chief Judge,* MILLER, Senior Circuit Judge and LIFLAND, District Judge.**

NIES, Chief Judge.

The United States appeals from a portion of the judgment of the United States Claims Court in *Anderson v. United States*, 16 Cl.Ct. 530 (1989), granting refunds to civilian employees of the Department of Defense of taxes withheld in the years 1984–1987 under provisions of the Federal Insurance Contributions Act (FICA), 26 U.S.C. § 3121(a) (as amended by the Social Security Amendments Act of 1983 (SSA), Pub.L. No. 98–21, § 327, 97

---

* Chief Judge Nies assumed the position of Chief Judge on June 27, 1990.

** The Honorable John C. Lifland, U.S. District Judge for the District of New Jersey, sitting by designation.

Stat. 65, 126–27, and the Deficit Reduction Act of 1984 (DRA or 1984 Act), Pub.L. No. 98–369, § 531, 98 Stat. 884). The Claims Court held that payments for living quarters and temporary lodging provided under the Overseas Differentials and Allowances Act (ODAA), 5 U.S.C. § 5923 (1988) enacted in 1960, Pub.L. No. 86–707, 74 Stat. 800 (repealed and reenacted in 1966, Pub.L. No. 89–554, § 1, 80 Stat. 511 (1966)), were not subject to FICA taxes. The United States limits its appeal to refunds claimed for the years 1985–1987, conceding that no FICA taxes are payable on ODAA payments made in 1984. Thus, on appeal this case raises only the question whether amendments to FICA made by the DRA subjected previously nontaxable payments for living quarters and temporary lodging, paid under the ODAA, to taxation under FICA, 26 U.S.C. §§ 3101–3128 (1988). We hold that it does not and therefore affirm.

I

Plaintiffs are eighteen civilian teachers employed at various times by the Department of Defense (DOD) at the United States Naval Air Station in Bermuda during 1984, 1985, 1986 and/or 1987. While employed as teachers in the Roger Chaffee school for dependents of government employees, plaintiffs received certain payments called "living quarters allowances" (LQA's) and "temporary lodging allowances" (TLA's) under ODAA, for lodging costs incurred on overseas housing in Bermuda. The government provides government housing in Bermuda gratuitously for teachers who were not already residing overseas at the time of their hire. However, when the supply of government housing, owned or rented, is not sufficient for all eligible employees, such employees receive certain cash payments as living allowances.

The regulations applicable to LQA and TLA payments by DOD are those promulgated by the Department of State. *See Department of State Standardized Regulations*, §§ 000–200 (Appendix to Appellees' Brief); *Anderson*, 16 Cl.Ct. at 532. These regulations provide for an LQA to be paid to civilian employees for the actual cost of a rental apartment or house, including utilities, up to a specified ceiling. A TLA is limited to the first 90 days after arrival at a new foreign station and to the last month before departure from the post. In 1960, ODAA codified the availability of LQA's and TLA's, but similar allowances have been available to civilian employees of the government stationed in foreign countries as far back as 1930. *See* Act of June 26, 1930, Pub.L. No. 71–445, ch. 622, 46 Stat. 818. By specific statute, the ODAA allowances have always been, and continue to be, excluded from "gross income" and, thus, exempt from income tax. *See* 26 U.S.C. § 912(1)(C) (1988).[1]

Under the Social Security Act, enacted in 1935, Pub.L. No. 74–271, § 801, 49 Stat. 636, a portion of the "wages" of many employees began to be taxed to provide for social security benefits.[2] These taxes are now identified as FICA taxes. Prior to January 1, 1984, wages from the government were totally excluded from FICA taxes. *See* 26 U.S.C. § 3121(b)(6) (1982).

In 1983, for the first time, FICA was extended to certain government employees. *See* Pub.L. No. 98–21, § 101(b)(1), 97 Stat. 65, 69 (codified at 26 U.S.C. § 3121(b)(5), (6) (1988)). As a consequence of this change, the Navy, which was the paymaster for the

---

1. Section 912(1) provides:

   The following items shall not be included in gross income, and shall be exempt from taxation under this subtitle:

   (1) Foreign areas allowances

   In the case of civilian officers and employees of the Government of the United States, amounts received as allowances or otherwise (but not amounts received as post differentials) under—

   (A) chapter 9 of title I of the Foreign Service Act of 1980,

   (B) section 4 of the Central Intelligence Agency Act of 1949, as amended (50 U.S.C. 403e),

   (C) title II of the Overseas Differentials and Allowances Act, or

   (D) subsection (e) or (f) of the first section of the Administrative Expenses Act of 1946, as amended, or section 22 of such act.

2. These provisions were reenacted as the Federal Insurance Contributions Act (FICA) in 1954. *See Internal Revenue Code of 1954*, 83rd Cong.2d Sess., ch. 21, 68A Stat. 415, 417.

plaintiffs, began including ODAA payments in the base for FICA taxes in June 1984, retroactive to January 1, 1984, the effective date of the 1983 amendments. The Navy did not, however, include any value for government-provided housing in a recipient's wages for FICA tax purposes. Meanwhile, the State Department has, at all times, continued to treat ODAA as non-taxable income under both FICA and the income tax code. Indeed, the government does not deny that only DOD withholds FICA taxes on ODAA payments.

Another 1983 amendment to FICA decoupled the definition of "wages" for FICA tax and income tax withholding purposes, by allowing Treasury to promulgate regulations to provide for different exclusions from "wages" under FICA than under the income tax withholding laws.[3] *See* Pub.L. No. 98–21, § 327(b)(1), 97 Stat. 65, 127 (1983) (codified in last para. of 26 U.S.C. § 3121(a)); *see also New England Baptist Hospital v. United States,* 807 F.2d 280 (1st Cir.1986) (provision added to section 3121(a) by SSA of 1983 intended to decouple definitions of "wages" in FICA statute and income tax withholding statute); *Canisius College v. United States,* 799 F.2d 18, 23–25 (2d Cir.1986) (same), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1887, 95 L.Ed.2d 495 (1987); *Temple University v. United States,* 769 F.2d 126 (3d Cir.1985) (same), *cert. denied,* 476 U.S. 1182, 106 S.Ct. 2914, 91 L.Ed.2d 544 (1986). However, no regulations have been issued and, in any event, this change did not affect the definition of "income" for either the FICA tax provisions or the income tax provisions.

In the Claims Court, the government sought to uphold collection of the FICA taxes, which taxpayers seek to recover, principally on the basis of the above-mentioned *1983* FICA amendments alone. A substantial part of the Claims Court's opinion is devoted to dealing with and rejecting this position. *See Anderson,* 16 Cl.Ct. at

534–37. On appeal, the government abandons that position, acknowledging that the 1983 amendments alone did not subject ODAA payments to FICA taxes. Before us, the government relies on changes subsequently made to FICA by the DRA as the basis for subjecting ODAA payments to FICA taxes beginning in 1985 and thereafter.

## II

### A

We will begin our analysis with the 1984 FICA provisions under which the government concedes ODAA payments were not taxable, and then review the 1985 version which the government asserts changed the situation.

The basic provision of the 1984 FICA statute, section 3101, which imposes the tax, reads:

> In addition to other taxes, there is hereby imposed on the *income* of every individual a tax equal to [certain] percentages of the *wages* (as defined in section 3121(a)) received by him with respect to employment (as defined in section 3121(b)). [Emphasis added.]

26 U.S.C. § 3101 (1982 & Supp. II 1984). "Income" is not defined in FICA but is clearly a broader term in the context of the above paragraph than "wages." *Cf. Central Illinois Public Serv. Co. v. United States,* 435 U.S. 21, 25, 98 S.Ct. 917, 919, 55 L.Ed.2d 82 (1978) ("wages" is a component of "income" in income tax statute); *Rowan Cos., Inc. v. United States,* 452 U.S. 247, 254, 101 S.Ct. 2288, 2292, 68 L.Ed.2d 814 (1981) ("wages" is a narrower concept than "income"). In 1984, "wages" was defined, for FICA purposes, in section 3121(a) as:

> For purposes of this chapter, the term "wages" means all remuneration for employment, including the cash value of all remuneration paid in any medium other

---

**3.** We note that this amendment responded to the Supreme Court decision in *Rowan Cos., Inc. v. United States,* 452 U.S. 247, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981), where the Supreme Court invalidated certain Treasury regulations that interpreted "wages" for FICA taxes differently

from the definition of "wages" for income tax withholding purposes, requiring that "wages" have the same interpretation in both statutes. *See* H.R.Rep. No. 98–25, 98th Cong. 1st Sess. at 80–81 (1983), U.S.Code Cong. & Admin.News 1983, pp. 143, 299, 300.

than cash; except that such term shall not include—....

26 U.S.C. § 3121(a) (1982 & Supp. II 1984). The definition then provides for certain specific exceptions listed in 19 paragraphs, e.g., certain disability payments, tips not paid in cash, and other specific types of payments or benefits.

Inasmuch as the specific 19 exceptions in section 3121(a) in 1984 carry over into 1985, the exclusion of ODAA from FICA taxes in 1984 did not result from the applicability of one of these exceptions; otherwise the government would have no basis for asserting ODAA payments became taxable as of 1985. In a comprehensive analysis, the Claims Court had rejected the government's argument that ODAA payments were "compensation for services" or "remuneration for employment" under the 1984 version of the statute, which included the SSA amendments. *See Anderson,* 16 Cl.Ct. at 534–37. The significance of this conclusion is that ODAA payments were not deemed either "wages" under FICA section 3121(a), or indeed, even "income" under income tax section 61 in 1984, irrespective of the specific exclusion in 26 U.S.C. § 912(1)(C).[4] In reaching its conclusion that ODAA payments were not taxable, the Claims Court pointed to the legislative history of the ODAA which clearly states that payments under the act were solely *reimbursements* for additional expenses of federal employees who were assigned to foreign posts. *Id.* at 537. The court noted that Congress intended ODAA payments not be considered part of the employee's *compensation* for tax purposes. *Id.; see also* S.Rep. No. 1647, 86th Cong.2nd Sess. (1960) *reprinted in* 1960 U.S.Code Cong. & Admin.News at 3338, 3350. To ensure this treatment, the explic-

it exclusion from "gross income" was placed in section 912(1).[5]

### B

#### *Deficit Reduction Act of 1984*

There is no question but that the changes made by the DRA effective January 1, 1985, represented a major reform of the *income tax* code, particularly with respect to the treatment of "fringe benefits." H.R.Rep. No. 98–432 (pt. 2), 98th Cong.2d Sess. at 1590–93, *reprinted in* 1984 U.S. Code Cong. & Admin.News at 697, 1214–17. Amendments made to FICA were, in contrast, stated to be merely "conforming" in nature. *See* Pub.L. No. 98–369, Sec. 2662(g), 98 Stat. 1160 (1984), amending § 327(d), 97 Stat. 126 (1983) (entitled *"Conforming Amendments* to Employment Taxes"). Nothing was said about taxing ODAA payments in any amendment or in the legislative history accompanying the DRA.

As an initial reaction, it is difficult to see how the government's position could possibly be reasonable: that ODAA payments which remain excluded from income for income tax purposes after the DRA were, *sub silentio,* made subject to FICA taxes by amendments "conforming" FICA to the new provisions in the income tax code. Upon full consideration, we can only conclude that the government's position is without merit. As explained below, nothing in the DRA changed FICA tax treatment of ODAA payments, which the government concedes were not taxable under FICA in 1984, into taxable "wages" in 1985. As we understand the DRA, ODAA payments remain excluded from "gross income" under the income tax statute, thus

---

**4.** "Compensation for services" is the phrase in IRC section 61(a)(1), the section defining "gross income" for income tax purposes. *See* 26 U.S.C. § 61(a)(1) (1982 & Supp. II 1984).

**5.** *See supra* at n. 1 for text. The Claims Court opinion does not rely on this provision, except as support for its conclusion that ODAA payments are not "remuneration for employment." *See Anderson,* 16 Cl.Ct. at 540. We prefer to rest our decision on the much narrower ground that this exclusion carries over into FICA taxes

by virtue of the structure of the 1985 statute itself; that is, after incorporation of the DRA amendments. Thus, we do not need to review the case law under prior statutes concerning what types of benefits are taxable as "wages" as that term is defined in section 3121(a). The Claims Court, however, was required to make such analysis in order to rule for the taxpayers under the 1984 statute, which included only the amendments made by SSA. The two statutes were less closely tied together before the DRA.

remaining excluded from "income" subject to the imposition of taxes on "wages" under FICA.

Prior to the 1984 changes in income tax treatment of fringe benefits, published rulings and regulations of the Internal Revenue Service took the position that certain employee benefits were noncompensatory, and thus excluded from income and FICA taxation. *See, e.g.,* Deleg. Order No. 514, 1920–2 C.B. 90 (1920) (supper money); Deleg. Order No. 946, 1921–4 C.B. 110 (1921) (value of transportation passes). Indeed, prior to the DRA, a statutorily imposed moratorium prevented Treasury from promulgating regulations concerning "fringe benefits" generally. *See* Pub.L. No. 95–427, § 1, 92 Stat. 996 (1978), extended by Pub.L. No. 96–167, § 1, 93 Stat. 1275 (1979), extended to December 31, 1983 by The Economic Recovery Tax Act, Pub.L. No. 97–34, § 801, 95 Stat. 172 (1981). The 1984 Act, however, prescribed an overall statutory approach to the taxation of such benefits, supplanting the prior administrative practice.

Section 61(a)(1) of the Code defines "gross income" upon which income taxes are based to include "compensation for services." *See* 26 U.S.C. § 61(a)(1) (1982 & Supp. II 1984). The DRA amended "compensation for services" so that for the first time "fringe benefits" are broadly included as part of such compensation.[6] At the same time, a new section 132 was added to exclude from "gross income" four types of "fringe benefits."[7] In addition, the 1984 Act amended the income tax withholding provisions which require employers to withhold income taxes from employees' "wages." *See* 26 U.S.C. § 3401 (1982 & Supp. III 1985) (Post–DRA). The definition of "wages" in section 3401(a) was amended to add the phrase "(including benefits)."[8] This language made it clear that benefits were taxable even if not paid in cash. Like the FICA tax statute's definition of "wages," section 3401(a) contains a series of specific exclusions, albeit differing in nature and scope. *See* 26 U.S.C. § 3401(a)(1)-(17) (1982 & Supp. II 1984) (Pre–DRA). The DRA amended this list to add an exclusion from "wages" for those benefits falling under, *inter alia*, section 132. *See* 26 U.S.C. § 3401(a)(18) (1982 & Supp. III 1985). As a result of these changes, an overall scheme was implemented whereby any amounts paid to an employee as "compensation for services" in the form of a "fringe benefit," whether paid in cash or other medium, after December 31, 1984, were made subject to income taxation and withholding, unless expressly excluded.

As noted, none of the above DRA amendments to the income tax code had any pertinence to ODAA payments. ODAA payments are exempt by reason of the opening clause of section 61(a) which bears repeating: "Except as otherwise provided in this subtitle, gross income means all income from whatever source...." ODAA payments, however, were *not made exempt* from income tax by reason of section 132. They have been and remain exempt from "income" by reason of the exclusion in section 912(1)(C), which is a specific "ex-

---

**6.** Section 61(a)(1) as amended reads:
§ 61. Gross income defined
(a) General definition
  Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:
  (1) Compensation for services, including fees, commissions, *fringe benefits,* and similar items;
       \*     \*     \*     \*     \*     \*
  26 U.S.C. § 61(a)(1) (emphasis added).

**7.** These four types are:
  (1) no-additional-cost service;
  (2) qualified employee discount;
  (3) working condition fringe; and
  (4) de minimis fringe.
  *See* 26 U.S.C. § 132 (1988).

**8.** Section 3401(a) as amended reads:
§ 3401. Definitions
(a) Wages
  For purposes of this chapter, the term "wages" means all remuneration (other than fees paid to a public official) for services performed by an employee for his employer, including the cash value of all remuneration (*including benefits* ) paid in any medium other than cash; except that such term shall not include remuneration paid—
       \*     \*     \*     \*     \*     \*
  26 U.S.C. § 3121(a) (1982 & Supp. III 1985) (emphasis added).

cept[ion] provided in this subtitle." Thus, it is a meaningless exercise to speculate over whether, if ODAA payments had not been specifically excluded from "gross income," they would be "compensation for services including ... fringe benefits"[9] and whether, if "fringe benefits," they would fall within the exception of section 132. ODAA payments having always been excluded from "gross income," the income tax withholding provisions of section 3401, in which "wages" are defined, are irrelevant. Not being income, ODAA payments cannot be "wages" for income tax withholding purposes. *See Central Illinois*, 435 U.S. at 25, 98 S.Ct. at 919; *Rowan Cos.*, 452 U.S. at 254, 101 S.Ct. at 2292. The government does not contend otherwise.

### C

### *1984 Changes in FICA Treatment of Fringe Benefits*

The DRA made few changes to the FICA tax provisions. No change was made in section 3101—the section imposing FICA taxes. The language remains: "[T]here is hereby imposed on the *income* of every individual a tax equal to [certain] percentages of the *wages* (as defined in section 3121(a)) received by him...." *See* 26 U.S.C. § 3101 (1982 & Supp. III 1985) (emphasis added).

Section 3121(a), which provides the definition of "wages" in FICA, was amended in two respects, indicated by underscoring, so that in 1985 the provision read as follows:

> For purposes of this chapter, the term "wages" means all remuneration for employment, including the cash value of all remuneration (including benefits) paid in

any medium other than cash; except that the term shall not include—

> \* \* \* \* \* \*

> (20) any benefit provided to or on behalf of an employee if at the time such benefit is provided it is reasonable to believe the employee will be able to exclude such benefit from income under section 74(c), 117 or 132.

26 U.S.C. § 3121(a) (1982 & Supp. III 1985).

The government argues that the addition of the phrase "(including benefits)" *subjects* fringe benefits, which it asserts includes ODAA payments, to FICA taxation. We cannot agree that taxation of fringe benefits under FICA rests *on this amendment.* In context the phrase merely clarifies, as it did in the income tax withholding provision, that fringe benefits not paid in cash should be treated the same as fringe benefits paid in cash. In fact, this FICA amendment to the definition of "wages," like the amendment to the definition of "wages" in the income tax withholding provision, section 3401, was made to conform FICA with the income tax code changes, and parallels the latter exactly, in language and position. As discussed above, "fringe benefits" in general became taxable for income tax purposes because of the DRA's change in the definition of "gross income" in section 61(a), not by reason of the "(including benefits)" *amendment in section* 3401(a). We see no basis for giving the amendment "(including benefits)" greater force in FICA than it has in connection with income taxes.[10] The words "(including benefits)" added to section 3121(a) did not convert non-income ODAA payments into "income" under section 3101. The government must, in fact, rely on the entirety of the income tax code, and in particular on the "gross income" definition in

---

**9.** We need not and do not attempt here to define these terms.

**10.** Indeed, in light of the Supreme Court's decision in *Rowan Cos.*, and the legislative response to *Rowan Cos.* in the SSA of 1983, we are constrained to interpret the "(including benefits)" language added by the DRA in the same manner in both statutes. The SSA amendment provided for treating "wages" in both statutes differently, but only through exclusions promul-

gated by regulation. *See* 26 U.S.C. § 3121(a) (1982 & Supp. II 1984) (last paragraph). There is no regulation pointed to which indicates that any different effect is to be attributed to "(including benefits)" as between the FICA and income tax withholding statutes. Thus, under *Rowan Cos.* the identical change to these statutory sections having substantially similar language is to be interpreted as having the same force and effect in each provision.

section 61(a)(1), to make "fringe benefits" taxable as "income" for FICA, as well as income tax, purposes. This becomes evident when one looks at the second amendment to section 3121(a).

The second amendment to FICA made by the DRA was to add the additional specific exclusion set out above in paragraph (20) which references, *inter alia,* section 132 of the income tax code. As indicated, section 132 addresses four types of fringe benefits, and excludes them from "gross income." The government maintains ODAA payments are taxable under FICA unless excluded by section 132. This analysis is backwards. "Fringe benefits" are not taxable *because of* the creation of the section 132 exception but *because of* their inclusion in the definition of "gross income" contained in section 61(a). As previously explained, section 61(a) has, since 1960, excluded ODAA payments from "gross income" through the exception provided in section 912(1)(C), and the addition of the "fringe benefits" language to section 61(a) has no effect on the "gross income" status of ODAA payments. Thus, while the government's position that "fringe benefits" are taxable under FICA unless they fall under section 132 may well have validity in the context of considering *other* fringe benefits, such benefits, unlike ODAA payments, were first made part of "gross income." In contrast, ODAA payments have never been within the definition of "gross income." ODAA payments have always been specifically excluded from being treated as income under section 61(a). Given the scheme of the income and FICA tax statutes and the structure of the changes made to those statutes by the DRA, it follows that ODAA payments cannot be treated as "wages" under FICA if they are not first made "income."

Looking at the relevant tax statutes as a whole, we conclude that the amendment of section 3121(a) of FICA to add exemption (20), referencing section 132 of the income tax code, did not convert the non-income status of ODAA payments into "income" for FICA tax purposes. Section 132 does not have that effect in the income tax statute. It has no greater force in connection with FICA taxes. Thus, by virtue of the 1985 statutory language itself, ODAA payments are not subject to FICA taxes.

In reaching this conclusion we have taken into consideration the legislative history on which the government relies, in particular the statement in the Senate Finance Committee Report No. 98–23, 98th Cong. 1st Sess. at 43, U.S.Code Cong. & Admin. News 1983, p. 184 which states:

> The Committee believes that amounts exempt from income tax withholding should not be exempt from FICA unless Congress provides an explicit FICA tax exclusion.

Our analysis here does not contravene this legislative history. We are not providing an exemption for ODAA payments which Congress has not *itself* provided from FICA by the language and structure of the FICA tax statute, which conditions imposition of FICA taxes on income.

### III

For the foregoing reasons, we affirm the part of the judgment appealed by the government.

AFFIRMED.

MILLER, Senior Circuit Judge, concurs in the result.